CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>JERRY NEHL BOYLAN,<br><br>        Defendant. | Case No. 2:20-CR-00600-GW<br><br>**MOTION TO STRIKE SURPLUSAGE**<br><br>August 18, 2022 at 8:00 a.m.<br><br>The Honorable George H. Wu |

Jerry Nehl Boylan, through his attorneys of record, Deputy Federal Defenders Georgina Wakefield, Gabriela Rivera, and Julia Deixler, hereby moves this Honorable Court for an order striking surplusage from the indictment.

/ /

/ /

/ /

/ /

This motion is based upon the attached memorandum of points and authorities, all files and records in this case, and such evidence and argument as may be presented at the hearing on the motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 30, 2022              By  /s/ *Georgina Wakefield*
                                  GEORGINA WAKEFIELD
                                  GABRIELA RIVERA
                                  JULIA DEIXLER
                                  Deputy Federal Public Defenders
                                  Attorney for JERRY NEHL BOYLAN

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD .......................................................................................... 2

III. ARGUMENT ....................................................................................................... 3

    A.    The regulations cited in the indictment are surplusage ............................... 3

    B.    The regulations are not relevant to the charged offense ............................. 4

    C.    The regulations should be struck from the indictment because their inclusion in the charge is confusing and prejudicial ........................... 7

        1.    The indictment prejudicially implies that Mr. Boylan is being criminally charged for violating three civil regulations ................................................................................... 7

        2.    The surplusage is further prejudicial because it leaves the incorrect and misleading impression that Mr. Boylan is facing a negligence *per se* charge ..................................................... 9

IV. CONCLUSION .................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Brighton Bldg. & Maintenance Co.*,
   435 F. Supp. 222 (N.D. Ill. 1977) ........................................................................... 7

*Gundy v. United States*,
   139 S. Ct. 2116 (2019) ............................................................................. 1, 4, 5, 6

*Hoopengarner v. United States*,
   270 F.2d 465 (6th Cir. 1959) ................................................................................... 3

*Liparota v. United States*,
   471 U.S. 419 (1985) ................................................................................................. 5

*United States v. Allied Towing Corp.*,
   602 F.2d 612 (4th Cir. 1979) ................................................................................... 3

*United States v. Daniel*,
   No. 09-CR-00993-MMM, 2010 WL 11507585
   (C.D. Cal. July 28, 2010) ............................................................................. 2, 3, 4, 5

*United States v. Garcia*,
   729 F.3d 1171 (9th Cir. 2013) ............................................................................ 9, 10

*United States v. Garcia-Paz*,
   282 F.3d 1212 (9th Cir. 2002) ............................................................................ 2, 3, 4

*United States v. Hubbard*,
   474 F. Supp. 64 (D.D.C. 1979) ................................................................................ 7

*United States v. Hudson*,
   11 U.S. 32 (1812) ...................................................................................................... 5

*United States v. Jenkins*,
   785 F.2d 1387, 1392 (9th Cir. 1986) .................................................................. 2, 3

*United States v. Keith*,
   605 F.2d 462 (9th Cir. 1979) ................................................................................. 10

*United States v. Long*,
   651 F.2d 239 (4th Cir. 1981) ................................................................................. 10

*United States v. Lopez*,
   4 F.4th 706 (9th Cir. 2021) ................................................................................. 2, 4

# TABLE OF AUTHORITIES

Page(s)

*United States v. Mandel*,
    415 F. Supp. 997 (D. Md. 1976) ........................................................... 10, 11

*United States v. Martin*,
    No. 07-CR-1205-CBM, 2009 WL 667299 (C.D. Cal. Mar. 10, 2009) ......... 2, 6

*United States v. Pardee*,
    368 F.2d 368 (4th Cir. 1966) ............................................................. 2, 9, 10

*United States v. Poindexter*,
    725 F. Supp. 13 (D.D.C. 1989) ..................................................................... 7

*United States v. Sahakian*,
    No. 02-CR-938-VAP, 2008 WL 11383346 (C.D. Cal. July 28, 2008) ......... 2, 6

*United States v. Singh*,
    No. 2:14-CR-00648-CAS-9, 2017 WL 3701448
    (C.D. Cal. Aug. 17, 2017) ............................................................................ 2

*United States v. Terrigno*,
    838 F.2d 371 (9th Cir. 1988) .................................................................. 5, 6

*United States v. Vastola*,
    670 F. Supp. 1244 (D.N.J. 1987) ............................................................ 7, 9

**Federal Statutes, Rules & Regulations**

18 U.S.C. § 1112 ................................................................................................. 9

18 U.S.C. § 1115 ................................................................................... 1, 3, 4, 6

22 U.S.C. § 2778 ................................................................................................. 5

34 U.S.C. § 20913(d) .......................................................................................... 5

46 U.S.C. § 8906 ................................................................................................. 6

46 C.F.R. § 185.410 ........................................................................................ 1, 7

46 C.F.R. § 185.420 ........................................................................................ 1, 7

46 C.F.R. § 185.524 ........................................................................................ 1, 7

46 C.F.R. § 185.900 ........................................................................................... 6

Fed. R. Crim. P. 7 ............................................................................................... 2

## TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

1 Charles A. Wright, Fed. Prac. and Proc. Crim. § 128 (4th ed. 2008)........................3, 4

Jordan B Darling, *Captain of the Conception plead not guilty to 34 counts of seaman's manslaughter on Feb. 16*, The Log (March 4, 2021), available at https://www.thelog.com/local/captain-of-the-conception-pleads-not-guilty/..................................................................................................8, 10

Robert Walch, *Federal Grand Jury Has Indicted the Captain of the Boat Conception, Jerry Boylan, on 34 Manslaughter Charges for the Deaths that Occurred in the 2019 Santa Barbara Boat Fire*, California Personal Injury Lawyers Blog (Dec. 2, 2020), available at https://www.californiapersonalinjurylawyersblog.com/federal-grand-jury-has-indicted-the-captain-of-the-boat-conception-jerry-boylan-on-34-manslaughter-charges-for-the-deaths-that-occurred-in-the-2019-santa-barbara-boat-fire/..................................................................................................8

## I. INTRODUCTION

Jerry Boylan is charged with seaman's manslaughter, a criminal offense codified at 18 U.S.C. § 1115. (*See* "Indictment," Dkt. No. 1.) But the indictment confusingly alleges that Mr. Boylan violated three civil regulations promulgated by the United States Coast Guard. Specifically, the indictment alleges that Mr. Boylan "caused the deaths" of 34 individuals "by his misconduct, negligence, and inattention to his duties" by "failing to have a night watch or roving patrol as required by 46 C.F.R. § 185.410 and the vessel's United States Coast Guard Certificate of Inspection, failing to conduct sufficient fire drills as required by 46 C.F.R. § 185.524, and failing to conduct sufficient crew training as required by 46 C.F.R. § 185.420." (Indictment at 3.) The indictment's reference to these civil regulations is surplusage; the regulations are not elements of the charged offense, nor are they necessary to satisfy an element of the charge. Indeed, the regulations are entirely irrelevant to the charge since, under *Gundy v. United States*, 139 S. Ct. 2116 (2019), it would be unconstitutional to define the scope of criminal liability under § 1115 by reference to regulations promulgated by the Executive Branch, as opposed to the Legislature.

Moreover, the Court should strike the regulations from the indictment because they are highly confusing and therefore prejudicial. If the jury were exposed to the indictment as currently written, it would be given the confusing impression that Mr. Boylan is being charged criminally with violating the three regulations. Indeed, several media outlets have drawn that conclusion about the charge. And even if the jury does not draw that erroneous impression, the indictment could at least lead a jury to believe that seaman's manslaughter is a negligence *per se* charge; that is, that if Mr. Boylan violated one of the charged civil regulations, then he automatically acted culpably enough to violate the criminal statute's standard of care. But that is not how criminal manslaughter works. Instead, the decision of what conduct rises to the level of criminal manslaughter must be "left to the jury" so that it can "measure the conduct of the defendant against all of the existing circumstances and determine therefrom whether" it

1

rises to criminally liable conduct.  *United States v. Pardee*, 368 F.2d 368, 375 (4th Cir. 1966).  Mr. Boylan is therefore asking this Court to strike the indictment's gratuitous and highly prejudicial references to three civil regulations.

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 7 provides that "[t]he indictment . . . must be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  The Rule further provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment." Fed. R. Crim. P. 7(d).  "Surplusage is language that 'goes beyond alleging elements of the crime.'" *United States v. Daniel*, No. 09-CR-00993-MMM, 2010 WL 11507585, at *4 (C.D. Cal. July 28, 2010) (quoting *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986)); *see also United States v. Lopez*, 4 F.4th 706, 726 (9th Cir. 2021); *United States v. Garcia-Paz*, 282 F.3d 1212, 1217 (9th Cir. 2002).

"While surplusage is not *per se* improper, the inclusion of surplusage must not be allowed to prejudice a defendant in the context of his case." *United States v. Singh*, No. 2:14-CR-00648-CAS-9, 2017 WL 3701448, at *12 (C.D. Cal. Aug. 17, 2017) (alteration and quotation marks omitted).  "Thus, a court will exercise its discretion to strike surplusage from an indictment where necessary 'to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" *Daniel*, 2010 WL 11507585, at *4 (quoting *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988)).  And even where surplusage has some relevance to a charge, courts will strike it from the indictment if its relevance is outweighed by its prejudicial effects. *United States v. Martin*, No. 07-CR-1205-CBM, 2009 WL 667299, at *5 (C.D. Cal. Mar. 10, 2009) (granting motion to strike because "[w]hile there is some probative value to these allegations, it is outweighed by the prejudice to Defendants"); *United States v. Sahakian*, No. 02-CR-938-VAP, 2008 WL 11383346, at *5–6 (C.D. Cal. July 28, 2008) (striking prejudicial allegations where the indictment

2

"contains ample language aside from these allegations that is sufficient" to satisfy the Government's theory of their relevance). Finally, in assessing a motion to strike surplusage, courts bear in mind that not all "evidence that would be admissible at trial is [] appropriate in an indictment; the question . . . is whether the material is unnecessary in making out a prima facie pleading of the violation." 1 Charles A. Wright, Fed. Prac. and Proc. Crim. § 128 (4th ed. 2008) (quotation marks and citation omitted).

### III.  ARGUMENT

**A.   The regulations cited in the indictment are surplusage**

The three regulations cited in the indictment are surplusage; the regulations are not elements of the charge, nor are they necessary to satisfy an element. *See Garcia-Paz*, 282 F.3d at 1217 ("Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage[.]"); *Daniel*, 2010 WL 11507585, at *4 ("Surplusage is language that 'goes beyond alleging elements of the crime.'" (quoting *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986))).

Mr. Boylan is charged with Seaman's Manslaughter, 18 U.S.C. § 1115. (*See* Indictment.) To sustain a conviction, the Government must prove that Mr. Boylan was (1) the captain of a vessel; (2) that his conduct on the vessel violated the statute's standard of care, namely "misconduct, negligence or inattention to his duties"[1]; (3) that his "misconduct, negligence or inattention to his duties" caused "the life of any person" to be "destroyed"; and (4) that the charged conduct occurred within the maritime or admiralty jurisdiction of the United States. 18 U.S.C. § 1115; *see also United States v. Allied Towing Corp.*, 602 F.2d 612, 615 (4th Cir. 1979); *Hoopengarner v. United States*, 270 F.2d 465, 470 (6th Cir. 1959).

---

[1] In a separate and concurrently filed motion, Mr. Boylan argues that the second element requires proof of gross negligence. The arguments in this motion apply with equal force regardless of the Court's decision with respect to that other motion.

3

Given that the regulations are not elements of the offense, the indictment's reference to the regulations is "language that goes beyond alleging elements of the crime" and is thus surplusage. *Daniel*, 2010 WL 11507585, at *4 (citation and quotation marks omitted). Moreover, to the extent the Government might argue that the regulations are means by which it may attempt to establish an element of the offense, the regulations are, at most, "one means (but not the only means)" to prove the charge and therefore "not required for conviction pursuant to the applicable criminal statute." *United States v. Lopez*, 4 F.4th 706, 726 (9th Cir. 2021) (concluding that indictment's reference to a statute was surplusage since the statute was "one means (but not the only means)" to establish an element of the charge). Stated otherwise, regardless of whether the regulations could be admitted into evidence at trial, they are surplusage because they are "unnecessary in making out a prima facie pleading of the violation." 1 Charles A. Wright, Fed. Prac. and Proc. Crim. § 128 (4th ed. 2008); *Garcia-Paz*, 282 F.3d at 1217 ("Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage[.]").

**B.   The regulations are not relevant to the charged offense**

Not only are the regulations listed in the indictment surplusage, but they also have no relevance to the seaman's manslaughter charge. In general, the Constitution requires that criminal liability be defined exclusively by the Legislature (in statutes) and not by the Executive Branch (in regulations). The only exception to this bedrock constitutional principle, articulated by the Supreme Court in *Gundy v. United States*, 139 S. Ct. 2116 (2019), does not apply here. Consequently, it would be unconstitutional to define the scope of criminal liability under the seaman's manslaughter statute, § 1115, by reference to regulations promulgated by the Executive Branch. And because liability under the statute cannot be defined through the regulations cited in the indictment, those regulations "are neither relevant nor material

4

to the charges" and should be struck from the indictment. *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988); *Daniel*, 2010 WL 11507585, at *4.

"The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419, 424 (1985); *see also United States v. Hudson*, 11 U.S. 32, 34 (1812). There is a narrow exception to this rule, under which Congress can delegate authority to define criminal liability to an executive agency, but only if a statute explicitly delegates that authority and articulates an "intelligible principle" guiding the agency's rulemaking. *Gundy*, 139 S. Ct. at 2123 ("A statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." (cleaned up)). If a criminal statute does not explicitly authorize the Executive Branch to define criminal liability, then any agency regulation that purports to define criminal liability under that statute would violate the Constitution's separation of powers. *See id.*[2]

Some statutes do explicitly delegate to the Executive Branch the authority to define the scope of criminal liability. *See, e.g.*, 34 U.S.C. § 20913(d) (SORNA provision stating that the "Attorney General shall have the authority" to prescribe rules for the registration of sex offenders); *Gundy*, 139 S. Ct. at 2123 (affirming constitutionality of SORNA since the statute provides an "intelligible principle" to guide the Attorney General's rulemaking); 22 U.S.C. § 2778 (Control of arms exports criminal statute delegating authority to the President to designate items "constitute[ing] the United States Munitions List").

---

[2] Notably, four Justices argued in concurring and dissenting opinions in *Gundy* that the Legislature can never delegate to executive agencies the authority to define criminal liability. *See Gundy*, 139 S. Ct. at 2130-31 (Alito, J., concurring); *Id.* at 2131-2148 (Gorusch, J., dissenting). Regardless, all member of the Court agreed that to the extent Congress can delegate that authority, it can do so only with explicit language written into a statute, which is lacking here.

But 18 U.S.C. § 1115 does not delegate authority to any other branch of government to define criminal liability. As discussed above, the statute provides a standard of care—"misconduct, negligence or inattention to his duties"—and states that a captain who violates that standard and thereby causes the loss of human life violates the statute. There is thus no delegation of authority in the statute, let alone the required "intelligible principle" guiding the agency's promulgation of regulations. *Gundy*, 139 S. Ct. at 2123. To define criminal liability under § 1115 by reference to regulations promulgated by the Executive Branch would thus violate the Constitution's separation of powers. *Id.* And because liability under the statute cannot be defined through the regulations cited in the indictment, those regulations "are neither relevant nor material to the charges." *Terrigno*, 838 F.2d at 373.

Moreover, the regulations do not claim to define criminal liability under § 1115, nor do they have any relevance to the statute. The regulations are promulgated by the Coast Guard and carry only civil enforcement mechanisms. *See* 46 C.F.R. § 185.900 (establishing "penalty for violations" of the regulations, namely civil penalties prescribed by "Subtitle II of Title 46, United States Code"); 46 U.S.C. § 8906 (establishing penalty of "not more than $25,000" for violation of the regulations). The regulations have no relevance to the criminal charge under § 1115.

Finally, even if the Court concludes that the regulations are relevant to the charged offense, the Court should still strike the regulations from the indictment because any relevance is significantly outweighed by the prejudice Mr. Boylan incurs by their inclusion in the indictment. *United States v. Martin*, No. 07-CR-1205-CBM, 2009 WL 667299, at *5 (C.D. Cal. Mar. 10, 2009) (striking allegations from indictment because "[w]hile there is some probative value to these allegations, it is outweighed by the prejudice to Defendants"); *See also United States v. Sahakian*, No. 02-CR-938-VAP, 2008 WL 11383346, at *5–6 (C.D. Cal. July 28, 2008) (same). As described below, the indictment's reference to the three regulations is highly prejudicial and outweighs any marginal relevance they have to the charges.

## C. The regulations should be struck from the indictment because their inclusion in the charge is confusing and prejudicial

### 1. The indictment prejudicially implies that Mr. Boylan is being criminally charged for violating three civil regulations

The indictment's reference to the regulations is highly prejudicial because it implies that Mr. Boylan is being criminally charged with violating three civil regulations. Indeed, multiple media outlets have already publicly described the indictment in this erroneous and prejudicial manner.

Where an indictment suggests that the defendant violated laws other than the ones charged, courts consistently strike those allegations as prejudicial surplusage. *See, e.g., United States v. Vastola*, 670 F. Supp. 1244, 1254 (D.N.J. 1987) ("Anything in the indictment that allows the jury to infer involvement with uncharged crimes . . . is improper"); *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989) (striking terms such as "among other things" and "at least" since they "could improperly indicate to a jury that the defendants were charged with offenses and conduct in addition to those actually listed in the indictment"); *United States v. Hubbard*, 474 F. Supp. 64, 83 (D.D.C. 1979) (striking reference to confrontation with FBI which was not charged and could be prejudicial); *Brighton Bldg. & Maintenance Co.*, 435 F. Supp. 222, 230-31 (N.D. Ill. 1977) (terms "at least" and "among other things" stricken as prejudicial surplusage because they suggested to jury that defendant was accused of uncharged crimes).

The indictment alleges that Mr. Boylan caused the deaths of 34 individuals "by his misconduct, negligence, and inattention to his duties on said vessel, including failing to have a night watch or roving patrol as required by 46 C.F.R. § 185.410 and the vessel's United States Coast Guard Certificate of Inspection, failing to conduct sufficient fire drills as required by 46 C.F.R. § 185.524, and failing to conduct sufficient crew training as required by 46 C.F.R. § 185.420." (Indictment at 3.) To a reader who is uninitiated in the law—that is, a juror—the indictment reads as though

Mr. Boylan is charged with causing the deaths of 34 individuals by failing to adhere to the regulations.

Indeed, some of the media reporting on this case has interpreted the indictment in this legally erroneous manner, reporting that Mr. Boylan is being criminally charged with violating the regulations. One outlet described the indictment as follows: "Boylan was alleged to be in violation of three safety regulations under the Code of Federal Regulations, rules, and regulations published in the Federal Register by departments and agencies of the federal government." Jordan B Darling, *Captain of the Conception plead not guilty to 34 counts of seaman's manslaughter on Feb. 16*, The Log (March 4, 2021).[3] The report continues, "Boylan is alleged to have caused the death of 34 people for failing to have a night watch or roving patrol; failing to conduct fire drills, and failing to conduct sufficient crew training. All required under the CFR." *Id.*; *see also* Robert Walch, *Federal Grand Jury Has Indicted the Captain of the Boat Conception, Jerry Boylan, on 34 Manslaughter Charges for the Deaths that Occurred in the 2019 Santa Barbara Boat Fire*, California Personal Injury Lawyers Blog (Dec. 2, 2020) (describing indictment as alleging "three (3) violations" and then describing regulations listed in indictment).[4] This interpretation of the charge—which is a natural layman's reading of the indictment—is legally erroneous, implying that Mr. Boylan is being charged criminally with violating civil regulations.

The indictment's citation to the three regulations improperly implies that Mr. Boylan violated other laws, which are not the subject of the criminal charge. The regulations should be struck from the indictment to avoid giving the jury the false

---

[3] Available at: https://www.thelog.com/local/captain-of-the-conception-pleads-not-guilty/

[4] Available at: https://www.californiapersonalinjurylawyersblog.com/federal-grand-jury-has-indicted-the-captain-of-the-boat-conception-jerry-boylan-on-34-manslaughter-charges-for-the-deaths-that-occurred-in-the-2019-santa-barbara-boat-fire/

8

impression that Mr. Boylan is charged not only with the seaman's manslaughter statute but also with other violations of law based on the regulations. *See Vastola*, 670 F. Supp. at 1254.

### 2. The surplusage is further prejudicial because it leaves the incorrect and misleading impression that Mr. Boylan is facing a negligence *per se* charge

The indictment's reference to the regulations at least gives the prejudicial misimpression that criminal negligence, sufficient to establish manslaughter, can be proven *per se* if Mr. Boylan violated one of the charged regulations. But it is well established that *criminal* manslaughter is not a negligence *per se* charge. Stated otherwise, the jury cannot be given the impression that if Mr. Boylan violated a civil regulation, then he automatically acted culpably enough to violate the criminal statute's standard of care. Instead, the decision of what conduct rises to the level of criminal negligence must be "left to the jury" so that it can "measure the conduct of the defendant against all of the existing circumstances and determine therefrom whether" it rises to criminally liable conduct. *United States v. Pardee*, 368 F.2d 368, 375 (4th Cir. 1966) (addressing involuntary manslaughter, 18 U.S.C. § 1112). The regulations should be struck from the indictment to avoid giving the jury a misleading and highly prejudicial impression about the charge.

The standard of care for a criminal manslaughter charge cannot be established *per se* by showing that the defendant violated a civil regulation or statute. *See United States v. Garcia*, 729 F.3d 1171, 1175–77 (9th Cir. 2013) (reversing manslaughter conviction under 18 U.S.C. § 1112 since the jury instruction erroneously implied that a violation of a traffic regulation *per se* established the manslaughter standard of care); *Pardee*, 368 F.2d at 373–75 (reversing manslaughter conviction because "We do not agree with the Government's contention that any unlawful act proximately causing the death is sufficient to" establish manslaughter). Instead, the decision of what conduct

9

rises to the level of criminal negligence must be "left to the jury" so that it can "measure the conduct of the defendant against all of the existing circumstances and determine therefrom whether" it rises to criminally liable conduct. *Pardee*, 368 F.2d at 375; *see also Garcia*, 729 F.3d at 1176-77 (jury instruction is erroneous if it implies that violation of civil law itself establishes standard of care for criminal manslaughter); *United States v. Keith*, 605 F.2d 462, 463–65 (9th Cir. 1979) (relying on *Pardee* and reversing manslaughter conviction).

The indictment here gives the misleading impression that seaman's manslaughter can be established *per se* if Mr. Boylan violated one of the charged regulations. The indictment states that Mr. Boylan committed "misconduct, negligence, and inattention to his duties"—i.e., violated the criminal statute—by violating three civil regulations. (*See* Indictment at 3.) The indictment thereby confusingly implies that the proof required to establish the standard of care for this serious criminal charge is coterminous with the proof required to establish a mere violation of a civil regulation. That is, it implies the Mr. Boylan is being charged with negligence *per se*. Indeed, as discussed above, the indictment has already been misinterpreted by the media to imply that Mr. Boylan is being charged with violating the three regulations, and not only with the seaman's manslaughter charge. *See, e.g.*, Jordan B Darling, *Captain of the Conception plead not guilty to 34 counts of seaman's manslaughter on Feb. 16*, The Log (March 4, 2021) ("Boylan was alleged to be in violation of three safety regulations under the Code of Federal Regulations, rules, and regulations published in the Federal Register by departments and agencies of the federal government.").[5]

In *United States v. Mandel*, 415 F. Supp. 997, 1009 (D. Md. 1976), *disapproved of on other grounds by United States v. Long*, 651 F.2d 239 (4th Cir. 1981), the district court struck an indictment's reference to a legal code because of the same exact risk of misleading the jury as is present here. The indictment there charged defendant-Mandel

---

[5] Available at: https://www.thelog.com/local/captain-of-the-conception-pleads-not-guilty/

10

with mail fraud by, among other things, violating the "Code of Ethics of the State of Maryland." *Id.* at 1003.  The court noted that the indictment could confuse the jury since, "[a]s the indictment presently stands . . . it contains the clear implication that the Code of Ethics is applicable to defendant Mandel and that its violation, in and of itself, constitutes a fraud on the citizens and state of Maryland." *Id.*  But, as a matter of law, whether or not the defendant's conduct amounted to criminal fraud could not be established *per se* by reference to the Code of Ethics.  *Id.* at 1009.  The court therefore concluded that "since the indictment as presently written has a prejudicial potential for confusing jurors as to the law, the references in the indictment to the Code of Ethics are surplusage and the Court will order them stricken."  *Id.*

      As in *Mandel*, the indictment here gives the misimpression that if Mr. Boylan violated any of the civil regulations charged, then he automatically failed to meet the criminal statute's standard of care.  The Court should strike the indictment's references to the regulations to avoid the "prejudicial potential for confusing jurors as to the law."  *Mandel*, 415 F. Supp. at 1009.

# IV. CONCLUSION

Mr. Boylan respectfully requests that the Court issue an order striking surplusage from the indictment, specifically the indictment's reference to three regulations.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 30, 2022         By  */s/ Georgina Wakefield*
                             Deputy Federal Public Defender
                             Attorney for Jerry Boylan