STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Chief, Environmental and Community Safety Crimes Section
JOSEPH O. JOHNS (Cal. Bar No. 144524)
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8644
    Facsimile: (213) 894-0141
    E-mail:  Matthew.O'Brien@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>JERRY NEHL BOYLAN,<br><br>       Defendant. | No. CR 20-600(A)-GW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE SURPLUSAGE<br><br>Hearing Date: August 18, 2022<br>Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>               Hon. George H. Wu |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Mark A. Williams, Joseph O. Johns, and Matthew W. O'Brien, hereby files its Opposition to defendant JERRY NEHL BOYLAN's Motion To Strike Surplusage (Dkt. No. 44).

//

//

//

1     This Opposition is based upon the attached memorandum of points

2   and authorities, the files and records in this case, and such further

3   evidence and argument as the Court may permit.

4   Dated:  July 21, 2022          Respectfully submitted,

5                                  STEPHANIE S. CHRISTENSEN
                                   Acting United States Attorney
6
                                   SCOTT M. GARRINGER
7                                  Assistant United States Attorney
                                   Chief, Criminal Division
8

9                                  _____/s/_____
                                   MARK A. WILLIAMS
10                                 JOSEPH O. JOHNS
                                   MATTHEW W. O'BRIEN
11                                 Assistant United States Attorneys

12                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................1

III.  LEGAL FRAMEWORK...............................................3

IV.   ARGUMENT......................................................4

      A.    The Coast Guard Regulations Referenced in the
            Indictment Are Not Surplusage...........................4

      B.    Even Assuming, Arguendo, That the Regulations
            Referenced in the Indictment Were Surplusage, They Are
            Not Prejudicial.........................................8

V.    CONCLUSION...................................................11

1

## TABLE OF AUTHORITIES

DESCRIPTION                                                                PAGE

**Federal Cases**

Gundy v. United States,
  139 S. Ct. 2116 (2019) ......................................... 7

United States v. Capener,
  No. 3:05-CR-0114-RCJ-RAM, 2006 WL 8429828,
  (D. Nev. Sept. 22, 2006) ...................................... 10

United States v. Daniel,
  2010 WL 749873 at *4 (C.D. Cal. 2010) ...................... 3, 4

United States v. Daniel,
  No. 09-CR-00993-MMM, 2010 WL 11507585 (C.D. Cal.) ............. 7

United States v. DePalma,
  461 F. Supp. 778 (S.D.N.Y. 1978) .............................. 4

United States v. Hedgepeth,
  434 F.3d 609 (3d Cir. 2006) ................................... 4

United States v. Hernandez,
  85 F.3d 1023 (2d Cir. 1996) ................................... 4

United States v. Laurienti,
  611 F.3d 530 (9th Cir. 2010) .................................. 3

United States v. Lopez,
  4 F.4th 706 (9th Cir. 2021) ................................... 7

United States v. Mandel,
  415 F.Supp. 997 (D. Md. 1976) ............................... 10

United States v. Moss,
  9 F.3d 543 (6th Cir. 1993) .................................... 6

United States v. Oakar,
  111 F.3d 146 (D.C. Cir. 1997) ................................. 4

United States v. O'Keefe,
  426 F.3d 274 (5th Cir. 2005) .................................. 9

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                                                <u>PAGE</u>

<u>United States v. Rezaq</u>,
   134 F.3d 1121 (D.C. Cir. 1998) ................................. 4

<u>United States v. Rich</u>,
   No. 18-2268, 2021 WL 4144059 (6th Cir. Sept. 13, 2021) ......... 6

<u>United States v. Root</u>,
   366 F.2d 377 (9th Cir. 1966) ................................... 6

<u>United States v. Terrigno</u>,
   838 F.2d 371 (9th Cir. 1988) ................................... 7

**Federal Statutes**

18 U.S.C. § 1115 ........................................... *passim*

18 U.S.C. § 2422 ............................................... 7

**Other**

46 C.F.R. § 185.410 .......................................*passim*

46 C.F.R. § 185.420 .......................................*passim*

46 C.F.R. § 185.524 .......................................*passim*

C. Wright, <u>Federal Practice and Procedure</u> § 128 (4th ed.).......... 4

Federal Rule of Criminal Procedure 7(d) ........................ 3, 4

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3          Defendant JERRY NEHL BOYLAN ("defendant") moves to strike from

4    the Indictment the government's allegations as to why he is guilty.

5    The Motion to Strike ("Motion") has no legal or factual support.  The

6    government respectfully requests that the Court deny the Motion in

7    its entirety.[1]

8    **II.  STATEMENT OF FACTS**

9          The government refers the Court to the Statement of Facts in the

10   government's Opposition to defendant's Motion To Dismiss for Failure

11   To Allege Gross Negligence for a general discussion of the facts

12   giving rise to this prosecution.

13         Five facts are relevant to this brief.  <u>First</u>, when the fire

14   started on the *Conception* in the middle of the night on September 2,

15   2019, defendant (the Captain of the *Conception*) and his crewmembers

16   were all asleep.  There was no night watch or roving patrol on the

17   *Conception* that night.  This was not an anomaly.  As a long list of

18   witnesses – including the crewmembers who survived the fire, as well

19   as former crewmembers and former passengers on the *Conception* – will

20   testify at trial, defendant almost never used a night watch or roving

21   patrol when he captained the *Conception* on overnight trips.

22         <u>Second</u>, federal law requires a ship captain to use a night watch

23   or roving patrol when his ship is carrying passengers overnight.

24   Specifically, 46 C.F.R. § 185.410 states:

25             The owner, charterer, master, or managing operator of a
              vessel carrying overnight passengers shall have a suitable
26             number of watchmen patrol throughout the vessel during the

27   ────────────────

28        [1] On July 19, 2022, the government obtained a First Superseding
     Indictment alleging the same charge (18 U.S.C. § 1115).  The changes
     in the First Superseding Indictment are not relevant here.

nighttime, whether or not the vessel is underway, to guard against, and give alarm in case of, a fire, man overboard, or other dangerous situation.

46 C.F.R. § 185.410.

Third, the *Conception*'s Certificate of Inspection (posted on the wall of the boat's wheelhouse) required a roving patrol. Specifically, the Certificate of Inspection stated, on the first page:

**A MEMBER OF THE VESSEL'S CREW SHALL BE DESIGNATED BY THE MASTER AS A ROVING PATROL AT ALL TIMES, WHETHER OR NOT THE VESSEL IS UNDERWAY, WHEN THE PASSENGER'S BUNKS ARE OCCUPIED.**

Fourth, the crewmembers onboard the *Conception* on September 2, 2019 had received almost no training regarding fire suppression. As two of the surviving crewmembers will testify at trial, they had no knowledge of how the firehoses functioned aboard the *Conception*. Tragically, during the fire, one of the crewmembers ran right past the ship's port-side fire hose, completely unaware that it was there. Another crewmember erroneously believed that the pumps that powered the fire hoses had to be activated from the engine room (which was inaccessible due to the fire), when in fact they could have been activated from the port fire station on the main deck (which was accessible during the fire). Although one crewmember indicated that he knew how to use the fire hoses and he knew that they could be activated from the fire stations on the main deck, he also confirmed that he had never actually removed or used the fire hoses.

Fifth, Coast Guard regulations require a ship captain to conduct fire drills with crewmembers and to provide crewmembers with adequate training on fire suppression and other emergency procedures. Specifically, 46 C.F.R. § 185.524 provides that "[t]he master shall

2

conduct sufficient fire drills to make sure that each crew member is familiar with his or her duties in case of a fire." 46 C.F.R. § 185.524  Likewise, 46 C.F.R. § 185.420 provides, in relevant part:

> The owner, charterer, master or managing operator shall instruct each crew member, upon first being employed and prior to getting underway for the first time on a particular vessel and at least once every three months, as to the duties that the crew member is expected to perform in an emergency including, but not limited to, the emergency instructions listed on the emergency instruction placard required by § 185.510 of this part and, when applicable, the duties listed in the station bill required by § 185.514 of this part.

46 C.F.R. § 185.420(a).

## III. LEGAL FRAMEWORK

Federal Rule of Criminal Procedure 7(d) governs the Motion: "Surplusage.  Upon the defendant's motion, the court may strike surplusage from the indictment or information."  Fed. R. Crim P. 7(d).  The Advisory Committee's notes state that "[t]his rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial."  Id., Advisory Committee's notes.  Thus, the purpose of a motion to strike under Rule 7(d) is to protect the defendant only from "immaterial," "irrelevant," "prejudicial or inflammatory allegations that are neither relevant nor material to the charges."  United States v. Laurienti, 611 F.3d 530, 546-47 (9th Cir. 2010) (citations omitted); see also United States v. Daniel, 2010 WL 749873 at *4 (C.D. Cal. 2010) (Morrow, J.) ("Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial") (quoting United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990)).

3

1    Thus, "a motion to strike surplusage should be granted only if
2    it is clear that the allegations are not relevant to the charge and
3    are inflammatory and prejudicial." United States v. Rezaq, 134 F.3d
4    1121, 1134 (D.C. Cir. 1998) (internal quotations and citations
5    omitted); see also United States v. Hernandez, 85 F.3d 1023, 1030 (2d
6    Cir. 1996) ("We have cautioned that motions to strike surplusage from
7    an indictment will be granted only where the challenged allegations
8    are not relevant to the crime charged and are inflammatory and
9    prejudicial.") (citations and quotation marks omitted).

10    The "scope of a district court's discretion to strike material
11    from an indictment is narrow." United States v. Oakar, 111 F.3d 146,
12    157 (D.C. Cir. 1997) (citing United States v. Jordan, 626 F.2d 928,
13    931 n.1 (D.C. Cir. 1980)); see also Rezaq, 134 F.3d at 1134 ("Rule
14    7(d) has been strictly construed against striking surplusage.");
15    United States v. DePalma, 461 F. Supp. 778, 797 (S.D.N.Y. 1978)
16    (standard for striking allegations as surplusage is "exacting").

17    Accordingly, "[m]otions to strike surplusage are rarely
18    granted." United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir.
19    2006); C. Wright, Federal Practice and Procedure § 128 (4th ed.)
20    ("[N]o matter how framed, it is an exacting standard, and courts are
21    often slow to grant a motion to strike surplusage."). "The burden of
22    showing that surplusage should be stricken as inflammatory and/or
23    prejudicial rests with the defendant." Daniel, 2010 WL 749873 at *4.

24    **IV.  ARGUMENT**

25        **A.  The Coast Guard Regulations Referenced in the Indictment Are Not Surplusage**

26    The Indictment alleges three ways in which defendant violated 18
27    U.S.C. § 1115 through his misconduct, negligence, or inattention to

4

his duties.  First, the Indictment alleges that defendant "fail[ed] to have a night watch or roving patrol"; second, defendant "fail[ed] to conduct sufficient fire drills"; and third, defendant "fail[ed] to conduct sufficient crew training."  To provide additional specificity, the Indictment lists the Coast Guard regulations requiring a night watch or roving patrol, fire drills, and emergency training (46 C.F.R. §§ 185.410, 185.524, and 185.420, respectively).

While it is not entirely clear, the Motion appears to object only to the Indictment's inclusion of the citations to the three Coast Guard regulations (i.e., rather than the allegations about the failure to have a night watch or roving patrol, fire drills, and emergency training).  The fatal flaw to the Motion is that the purported surplusage is directly relevant to the government's case.

At trial, to prove that defendant violated 18 U.S.C. § 1115, the government will elicit testimony from the surviving crewmembers (as well as former crewmembers and passengers on the Conception) proving that, as alleged in the Indictment, defendant (1) failed to have a night watch or roving patrol; (2) failed to conduct sufficient fire drills; and (3) failed to conduct sufficient crew training regarding fire suppression.  The government will also elicit testimony that three Coast Guard regulations in effect as of September 2, 2019 required defendant to have a night watch or roving patrol, to conduct sufficient fire drills, and to conduct sufficient crew training regarding fire suppression.  Together, the testimony about defendant's safety failures (from eyewitnesses) and defendant's safety obligations (from a Coast Guard witness) will prove defendant's misconduct, negligence, or inattentiveness to his duties, as required by 18 U.S.C. § 1115.

Accordingly, defendant is objecting to allegations (and presumably, the underlying evidence) that the government will use to prove defendant's guilt.  The Indictment's allegations about defendant's safety obligations are therefore the opposite of surplusage.  See, e.g., United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993) ("[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).") (citation omitted); United States v. Root, 366 F.2d 377, 381 (9th Cir. 1966) ("Words that are employed in an indictment that are descriptive of that which is legally essential to the charge in the indictment cannot be stricken out as surplusage.").

Against this backdrop, the Motion claims that because there may be other ways for the government to establish defendant's misconduct, negligence, or inattention to his duties at trial (i.e., other than the Coast Guard regulations), the regulations must be surplusage. (Motion at 4.)  This is nonsense.  The regulations cited in the Indictment are the most direct and objective basis for the government to prove defendant's safety duties regarding the fire, and hence how he disregarded those duties.  See, e.g., United States v. Rich, No. 18-2268, 2021 WL 4144059, at *35 (6th Cir. Sept. 13, 2021) ("the government is not limited solely to pleading the elements of the offense (with anything falling outside the elements subject to being struck as surplusage)").  The Motion does not cite a single authority

requiring the exclusion of such fundamental allegations from an indictment.[2]

Unable to identify precedent striking an indictment's allegations regarding why the defendant is guilty of the charged offense, the Motion spends pages arguing that the Indictment's allegations are unconstitutional pursuant to Gundy v. United States, 139 S. Ct. 2116 (2019).  (Motion at 4-6.)  While creative, this argument is untethered to any judicial precedent and ignores the facts of this case.  Gundy involved whether Congress may delegate certain powers to the Executive Branch.  It did not involve a motion to strike surplusage.  Nor do any of the three opinions in Gundy, spanning 33 pages, cast a word of doubt about the government's right to specify in an indictment how and why a defendant committed the alleged crime.

To be clear: in contrast to the dire picture painted by the Motion, the government is not arguing that if defendant violated the three Coast Guard regulations listed in the Indictment then he must automatically be guilty of violating 18 U.S.C. § 1115.  As a result, Gundy is inapposite.  Instead, the government will argue at trial that defendant's failures to comply with the safety duties imposed on

_____

[2] The Motion cites United States v. Lopez, 4 F.4th 706 (9th Cir. 2021), several times, but that decision did not involve a motion to strike but rather the defendant's (unsuccessful) argument on appeal that the government had not proven that he had violated a statute from Guam that was mentioned in the indictment as a predicate for the federal offense (attempting to transfer obscenity to a minor under sixteen years of age in violation of 18 U.S.C. § 2422(b)).  Likewise, the Motion repeatedly cites United States v. Daniel, No. 09-CR-00993-MMM, 2010 WL 11507585 (C.D. Cal.) (prosecuted by the undersigned counsel), but in that case Judge Morrow denied the defendant's motion to strike in its entirety.  Likewise, in United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988), also repeatedly cited in the Motion, the Ninth Circuit affirmed the district court's denial of the defendant's motion to strike alleged surplusage.

7

1   him by 46 C.F.R. §§ 185.410, 185.524, and 185.420 evidence his

2   neglect of his duties.

3        Nonetheless, the Motion argues that "[t]he regulations have no

4   relevance to the criminal charge under § 1115."  (Motion at 6.)

5   This, too, is nonsensical.  What could be more relevant to

6   allegations that defendant disregarded his duties by "failing to have

7   a night watch or roving patrol," "failing to conduct sufficient fire

8   drills," and "failing to conduct sufficient crew training," than the

9   federal regulations requiring defendant to do those very things?  At

10  trial, of course, the defense is free to argue that defendant did use

11  a night watch or roving patrol, or that defendant did train his

12  crewmembers in fire suppression.  Or the defense can argue that

13  defendant was not required to use a night watch or roving patrol, or

14  to train his crewmembers in fire suppression.  But the idea that the

15  government is not allowed to include such pivotal allegations in the

16  Indictment has no legal support, and the Motion identifies none.

17       **B.   Even Assuming, <u>Arguendo</u>, That the Regulations Referenced in
         the Indictment Were Surplusage, They Are Not Prejudicial**

18

19       Even if, despite the foregoing, the Court were inclined to find

20  that the Coast Guard regulations referenced in the Indictment

21  actually are surplusage, there would be no grounds to strike the

22  regulations because they are neither inflammatory nor prejudicial.

23       To establish prejudice, the Motion cites cases disapproving of

24  indictments that mention uncharged crimes or uncharged conduct.

25  (Motion at 7.)  That is the opposite of this case, where the three

26  Coast Guard regulations provide evidentiary support for the charged

27  offense.  While the regulations are "uncharged" in the sense that the

28  indictment does not charge a criminal violation of the regulations

8

themselves, defendant's criminal conduct – his failure to use a night watch or roving patrol, and his failure to provide fire drills and training to his crew – falls squarely within the scope of the regulations.  Defendant's argument would make sense if the Indictment cited regulations governing activities that had nothing to do with the criminal charge; that is the opposite of the allegations here.

Through jury instructions, the parties and the Court will be able to clarify for jurors that defendant may not be found guilty of violating 18 U.S.C. § 1115 solely because he might have violated 46 C.F.R. §§ 185.410, 185.524, or 185.420.  The jury instructions will confirm that it is the jury's duty to find whether or not defendant violated 18 U.S.C. § 1115 due to his misconduct, negligence, or inattention to his duties.  The jury instructions will eliminate any purported risk that jurors will convict defendant for violating the Coast Guard regulations even if, for some reason, the jurors do not believe that defendant violated 18 U.S.C. § 1115.

Nor is there any risk that the jurors will think that defendant is facing a negligence per se charge.  (Motion at 9-11.)  The jury instructions will confirm that the government must prove the three elements of the Section 1115 charge: (1) defendant was a captain or other person employed on the Conception; (2) defendant committed misconduct, was negligent, or was inattentive to his duties aboard the Conception; and (3) by reason of such misconduct, negligence, or inattention to duties, human life was destroyed.  See 18 U.S.C. § 1115; United States v. O'Keefe, 426 F.3d 274 (5th Cir. 2005).  The fact that the same evidence that will prove the second element of the Section 1115 charge might also establish a violation of the

referenced Coast Guard regulations does not transform the Section 1115 charge into a negligence per se offense.

Finally, United States v. Mandel, 415 F.Supp. 997 (D. Md. 1976) does not help defendant here.  (Motion at 10-11.)  The problem with the indictment in Mandel was that it implied that a violation of Maryland's Code of Ethics by the defendant (Maryland's governor) "in and of itself, constitutes a fraud."  Mandel, 415 F.Supp. at 1009. The court struck the reference to the Code of Ethics as surplusage because under state law the Code of Ethics did not apply to the office of governor, and therefore the reference was irrelevant and likely to prejudice the jury.  Id.  In contrast, here there is no dispute that the Coast Guard regulations applied to defendant; the Motion does not argue otherwise.  See, e.g., United States v. Capener, No. 3:05-CR-0114-RCJ-RAM, 2006 WL 8429828, at *8 (D. Nev. Sept. 22, 2006) (distinguishing Mandel and declining to strike references to a code of medical ethics because "Defendant is a doctor and commonly accepted medical ethics would thus be relevant in determining whether he schemed to defraud health care programs" and the same references "demonstrate[] that Defendant intentionally violated a known legal duty").  Moreover, here, unlike in Mandel, defendant is charged with "inattention to his duties," making the issue of what his duties were even more critical.  For that reason, the Indictment specifies three of defendant's most relevant duties and the regulations imposing those duties.  There is nothing improper about the allegations.

//

//

//

**V.    CONCLUSION**

    For the foregoing reasons, the government respectfully requests that this Court deny the Motion.

Dated: July 21, 2022                 Respectfully submitted,

                                     STEPHANIE S. CHRISTENSEN
                                     Acting United States Attorney

                                     SCOTT M. GARRINGER
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                     _____/s/_____
                                     MARK A. WILLIAMS
                                     JOSEPH O. JOHNS
                                     MATTHEW W. O'BRIEN
                                     Assistant United States Attorneys

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

11