Name: AUSA Mark A. Williams
Address: 312 N. Spring St.
City, State, Zip: Los Angeles, CA 90012
Phone: (213) 894-3359
Fax: (213) 894-0141
E-Mail: mark.a.williams@usdoj.gov

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☐ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | CR 20-600-GW |
| v. | |
| JERRY NEHL BOYLAN | NOTICE OF APPEAL |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that ____United States of America____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**~~Civil Matter~~**

☒ Order (specify):
Order Dismissing Indictment, CR No.71, Filed 9-1-22;
Tentative Order, CR No. 63, Filed 8-30-22
☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ___9-1-22; 8-30-22___. Entered on the docket in this action on ___9-2-22; 8-30-22___.

A copy of said judgment or order is attached hereto.

| 9-7-22 | /s/ Mark A. Williams |
|---|---|
| Date | Signature |
| | ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk |

Note: The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES - GENERAL

| Case No. | CR 20-600-GW | Date | September 1, 2022 |
|---|---|---|---|

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | NONE |

| Javier Gonzalez | Terri A. Hourigan | Matthew O'Brien; Mark A. Williams; Brian R. Faerstein |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Jerry Nehl Boylan | | ✔ | ✔ | Georgina Wakefield, DFPD<br>Gabriela Rivera, DFPD<br>Julia Deixler, DFPD<br>Joshua D. Weiss, DFPD | | ✔ | ✔ |

PROCEEDINGS: **ARRAIGNMENT ON FIRST SUPERSEDING INDICTMENT;**

**DEFENDANT'S MOTION TO SUPPRESS STATEMENT [40], DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR FAILURE TO ALLEGE GROSS NEGLIGENCE [42], DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO ALLEGE THE JURISDICTIONAL ELEMENT OF 18 U.S.C. § 1115 [43], DEFENDANT'S MOTION TO STRIKE SURPLUSAGE [44], and DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AS MULTIPLICITOUS OR TO COMPEL THE GOVERNMENT TO ELECT AMONG MULTIPLICITOUS COUNTS [45]**

Hearing is held by video teleconference. Defendant's CARES Act waiver is on file.

Defendant is arraigned on the First Superseding Indictment. Defendant acknowledges receipt of a copy and waives reading thereof.

The Court's Tentative Rulings on the above-entitled Motions was issued on August 30, 2022 [63]. After hearing the arguments of counsel, the Court adopts its tentative ruling as its final decision on Defendant's motion to dismiss the First Superseding Indictment for failure to allege gross negligence. The dismissal is without prejudice. The Court continues the status conference set for September 22, 2022 to October 6, 2022 at 8:00 a.m. The trial set for October 4, 2022 is vacated and taken off-calendar.

: 40

Initials of Deputy Clerk  JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES - GENERAL

| Case No. | CR 20-600-GW | Date | August 30, 2022 |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

Interpreter  NONE

| Javier Gonzalez | None Present | Matthew O'Brien - not present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Jerry Nehl Boylan | not | | ✔ | Georgina Wakefield, DFPD | not | | ✔ |

**PROCEEDINGS:** **IN CHAMBERS - TENTATIVE RULINGS ON DEFENDANT'S MOTION TO SUPPRESS STATEMENT [40], DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR FAILURE TO ALLEGE GROSS NEGLIGENCE [42], DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO ALLEGE THE JURISDICTIONAL ELEMENT OF 18 U.S.C. § 1115 [43], DEFENDANT'S MOTION TO STRIKE SURPLUSAGE [44], and DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AS MULTIPLICITOUS OR TO COMPEL THE GOVERNMENT TO ELECT AMONG MULTIPLICITOUS COUNTS [45]**

Attached hereto is the Court's Tentative Rulings on the above-entitled Motions set for hearing on September 1, 2022 at 10:30 a.m.

: 

Initials of Deputy Clerk  JG

<u>*United States of America v. Boylan*</u>, Case No. 20-CR-600-GW
Tentative Rulings on: (1) Motion to Dismiss Indictment for Failure to Allege Gross Negligence, (2) Motion to Strike Surplusage, (3) Motion to Dismiss the Indictment for Failure to Allege the Jurisdictional Element of 18 U.S.C. § 1115, (4) Motion to Dismiss the Indictment as Multiplicitous or to Compel the Government to Elect Among Multiplicitous Counts, and (5) Motion to Suppress Statement

On June 30, 2022, defendant Jerry Nehl Boylan ("Defendant") filed 5 motions in connection with this case which stems from a fire onboard, and the sinking of, a boat – the *Conception* – off of Santa Cruz Island that resulted in the deaths of 33 passengers and 1 crew member. Defendant was the captain of that vessel. The United States of America (the "Government") originally charged Defendant in an Indictment setting forth 34 separate counts of violation of 18 U.S.C. § 1115 (currently-titled "Misconduct or neglect of ship officers"). After receiving Defendant's motions (delineated above, *see* ECF Nos. 40, 42-45), the Government obtained a First Superseding Indictment ("FSI") on July 19, 2022, which included only a single count for violation of the same statute (though still covering the deaths of all 34 individuals), designated as "Seaman's Manslaughter" in the FSI. The Government then "opposed" two of Defendant's motions by arguing that those motions were moot given the FSI, and "opposed" a third – a motion to suppress a statement – by indicating that it was moot because the Government has no intent to introduce the statement in question "into evidence at trial or use it for impeachment purposes." Docket No. 49. As to those three motions, Defendant filed no Reply, at least suggesting that he does not disagree with the Government's response as to those motions in its Opposition. As such, the Court will not issue a ruling on those three motions.

That leaves two motions. One of those consists of Defendant's desire to have certain material he considers to be "surplusage" stricken from the Indictment (or, now, the FSI). The Court sees no need to rule on that motion at this time because, at least at this point, it has no plans to either read the FSI to the jury or to give the FSI to the jury (a suggestion Defendant himself made, but only in his Reply brief). If, for some reason, that intention changes at a later date, the Court will revisit the issues raised by this motion at that time.

As a result, only one motion remains for decision at this time. That motion seeks a dismissal, without prejudice, of the Indictment (now the FSI) because the charging document does not allege what Defendant believes is a required element of the crime – *gross* negligence. Here,

1

in pertinent part, the FSI alleges that Defendant "by his misconduct, negligence, and inattention to his duties on said vessel, including failing to have a night watch or roving patrol . . . , failing to conduct sufficient fire drills . . . , and failing to conduct sufficient crew training . . . , caused the deaths" of 34 individuals.  Docket No. 46, at 2:6-4:2.

The Government does not agree that gross negligence is an element of a violation of 18 U.S.C. § 1115.  The statute in question provides, in pertinent part, as follows:

> Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose *misconduct, negligence, or inattention to his duties* on such vessel the life of any person is destroyed, and every owner, charterer, inspector, or other public officer, through whose fraud, neglect, connivance, misconduct, or violation of law the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 1115 (emphasis added).  The question of whether Section 1115 has gross negligence, or only simple negligence, as a required element, is an open one in this Circuit (and almost all Circuits).

It is an important question, not just an academic one, because "[t]he failure of an indictment to detail each element of the charged offense generally constitutes a fatal defect." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979).  This is true even when an indictment "tracks the language of a statute."  *Id.; see also United States v. Garcia*, 729 F.3d 1171, 1177 (9th Cir. 2013) ("Although an instruction tracking a statute is generally not erroneous, statutory language cannot be used in an instruction if that language omits a required element of the crime.") (omitting internal citation).  In the end, a person "cannot be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury." *Keith*, 605 F.2d at 464.

Prior to discussing the authorities that may or may not be considered germane to this question, it is important to frame Defendant's argument by noting that it draws from, and is in many ways founded upon, many of the same arguments made in connection with another statute, 18 U.S.C. § 1112.  That statute provides, in pertinent part, that involuntary manslaughter results from the unlawful killing of a human being without malice "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a).  Assessment of that statute's text – and the tools courts have used to understand/apply it – may become important to understanding Section 1115's own language.

The Court starts its assessment of the relevant case law with the only Circuit Court of

2

Appeals to have confronted this question head-on in a published decision – the Fifth Circuit. That Circuit's decision in *United States v. O'Keefe*, 426 F.3d 274 (5th Cir. 2005), poses the biggest hurdle – in terms of *published* decisions[1] – to Defendant's argument here. In that case, the Court of Appeals affirmed the defendant's conviction for seaman's manslaughter under 18 U.S.C. § 1115, specifically rejecting his argument that the district court had erred by rejecting his proposed jury instruction stating that gross negligence or heat of passion was necessary for such a conviction. *See id.* at 276.

First, Defendant correctly observes that because the *O'Keefe* decision involved review of the district court's rejection of the defendant's request for a particular jury instruction, the abuse of discretion standard of review applied. *See id.* at 277. But it is not clear that this observation helps him – the Fifth Circuit also noted that it would reverse the district court's rejection of a proposed jury instruction only if, among other things, the requested jury instruction "was a substantially correct statement of law." *Id.* *O'Keefe* clearly decided that it was *not* a substantially correct statement of the law, at least insofar as the instruction attempted to impose a gross negligence requirement.

The defendant in *O'Keefe*, like Defendant here (as discussed further *infra* in connection with potentially-relevant Ninth Circuit precedent), argued that "Congress is presumed to have incorporated common law meanings in the terms it uses in the statutes." *Id.* at 278. The Fifth Circuit, like the district court below, rejected that argument. *See id.* at 278 n.1.[2] Instead, the Fifth

---

[1] In *United States v. Alvarez*, 809 Fed. Appx. 562 (11th Cir. 2020), the Eleventh Circuit ruled, in an *unpublished* opinion, that the district court had correctly denied the defendant's motion to dismiss the indictment based, in part, on the argument that 18 U.S.C. § 1115 "unconstitutionally criminalized simple negligence." *Alvarez*, 809 Fed. Appx. at 566, 568-69. The Eleventh Circuit observed that "the Supreme Court has long recognized Congress's power to criminalize mere negligence or to impose even criminal strict liability." *Id.* at 567. In the process, the appellate court commented that "[t]he plain language of the statute . . . criminalizes simple negligence." *Id.* But there is no indication that the defendant in that case contended otherwise; indeed, it would have been an odd argument had he done so, considering that he argued that the statute was, in fact, unconstitutional *because* it criminalized simple negligence. Nevertheless, *Alvarez* – again, an unpublished opinion – does include *dicta* repeating the Fifth Circuit's reasoning in *O'Keefe* that only negligence was required, a conclusion that it also observed the Fifth Circuit had repeated in 2015 in *United States v. Kaluza*, 780 F.3d 647, 657 (5th Cir. 2015). *See Alvarez*, 809 Fed. Appx. at 568. Of course, because the defendant in that case does not appear to have actually raised the gross negligence argument, Defendant here points out that the *Alvarez* court was "not presented with any authorities showing why gross negligence applies." Docket No. 42, at 12:4-5.

[2] The Fifth Circuit adopted the reasons given by the district court, which included the following explanation for why Section 1115 should be understood differently from Section 1112:

> [Section] 1112 and § 1115 are separate crimes addressing different concerns with different penalties. Involuntary manslaughter as defined in § 1112 applies to *all* persons, regardless of where the offense occurs or whether the offender had any unique responsibility or fiduciary duty

3

Circuit approved the district court's analysis, which included citation to five "early cases," leading the district court to conclude that "[i]t appears clear from the purpose of the statute, its legislative history and the available case law interpreting it that any degree of negligence is sufficient to meet the culpability threshold."[3]  *Id.*; *see also United States v. Kaluza*, 780 F.3d 647, 657 (5th Cir. 2015) ("Unlike the common law definition of manslaughter and the companion statutory definition for general manslaughter found in Section 1112, Section 1115 only requires the proof of any degree of negligence to meet the culpability threshold.").

In addition, the appellate court observed that it had "consistently held that when the plain meaning of the statute is clear on its face, courts are required to give effect to the language of the statute according to its terms." *Id.* at 279.  It held that the terms were "unambiguous and therefore must be given their plain meaning," and that the district court had not abused its discretion. *Id.*; *see also Kaluza*, 780 F.3d at 659-60.  As will be discussed further below, Defendant disagrees that Section 1112's "purpose" or legislative history come into play here, but agrees that the statute should be applied as written – only that this latter assessment is made consistent with the understanding of the terms in light of the background rules of the common law, not simply by strict adherence to a common, or layman's, understanding of terms such as "negligence."

As noted previously, the Ninth Circuit has not attempted to construe Section 1115. However, it *has* construed Section 1112, and the Circuit's method of construction, Defendant argues, should have a meaningful role in attempting to properly understand and apply Section 1115.  But to fully understand the course of this potentially-relevant case law in the Ninth Circuit, the Court must first start with a case dealing not with Section 1112, but with an Alaskan statute, and then must briefly take a detour to the Fourth Circuit before returning to Ninth Circuit law.

---

towards the victim of the crime.  On the other hand, § 1115 applies only to commercial vessels whose operators and owners, historically speaking, "daily have the lives of thousand[s] of helpless human beings in their keeping."

*United States v. O'Keefe*, 426 F.3d 274, 278 n.1 (5th Cir. 2005).  The Government repeats that reasoning here.  See Docket No. 50, at 22:8-16.  There is no obvious reason to disagree with these observations.  The question, however, is whether those are *meaningful* distinctions in attempting to construe the two statutes' terms, especially if Defendant is correct that common-law understandings applicable to manslaughter statutes apply to both.

[3] None of the five "early cases" are from within the Ninth Circuit.  To the extent the Government attempts to paint *Van Schaick v. United States*, 159 F. 847 (2d. Cir. 1908) – the only one of the five issued by an appellate tribunal – as another example of a Circuit Court of Appeal having squarely-addressed and defined "negligence" in Section 1115, *see* Docket No. 50, at 12-14, this would amount to a gross exaggeration of that decision's reasoning, which did not appear to touch at all on the question of whether something more than simple negligence was required.  It is more likely that the Government intended to refer to *Alvarez* in this regard but, as noted, *Alvarez* was an unpublished decision, making it of questionable utility (for at least that reason).

4

*Barbeau v. United States*, 193 F.2d 945 (9th Cir. 1951), dealt with a conviction of "manslaughter by culpable negligence," and one of the questions that merited the attention of the Ninth Circuit was whether "the evidence of negligence [was] sufficient to justify the verdict of culpable negligence?" *Id.* at 553. Alaska's statute for "negligent homicide" covered the "culpable negligence of another." *Id.* at 557. The Ninth Circuit decided that the trial court had properly-instructed the jury that in order to convict the defendant of this crime it had to find "negligence of such a degree, so gross and wanton, as to be deserving of punishment," that "culpable negligence" is "something more than the slight negligence necessary to support a civil action for damages" and that it "implies a reckless disregard of consequences, a needless indifference to the rights and safety and even the lives of others." *Id.* at 559.

Fifteen years later, in *United States v. Pardee*, 368 F.2d 368 (4th Cir. 1966), the Fourth Circuit reviewed the conviction of a defendant for involuntary manslaughter under 18 U.S.C. § 1112. The Fourth Circuit, explaining that "the full character of the unlawful act as an ingredient of involuntary manslaughter was not completely explained to the jury," reversed the defendant's conviction with respect to that statute. *See id.* at 373, 375.

Echoing one of the principles touched upon in *Morissette v. United States*, 342 U.S. 246 (1952),[4] the Fourth Circuit noted that "there is no Federal criminal common law," but that "certainly the statute's terms, when known to and often derived from the common law, are referable to it for interpretation." *Id.* at 374. Interpreting the term "unlawful act," the Fourth

---

[4] *Morissette* did not deal with either Section 1115 or Section 1112, but with the crime of stealing/larceny, and a statute where Congress had failed to express any required criminal intent. Summarizing the course of American legal history on the subject, the Supreme Court explained that "[a]s the state codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation." 342 U.S. at 252. The Supreme Court reasoned that:

> Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act.

*Id.* at 262. It then concluded that:

> where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

*Id.* at 263. Thus, the "mere omission" of "any mention of intent" in the statute in question would "not be construed as eliminating that element from the crimes denounced." *Id.*

5

Circuit agreed with an earlier exposition that concluded that a charge of manslaughter by negligence could not be supported by "proof of ordinary simple negligence that would constitute civil liability," but instead required "gross negligence." *Id.* (quoting *State of Maryland v. Chapman*, 101 F.Supp. 335, 340-41 (D. Md. 1951)).

Then, in 1979, the Ninth Circuit considered a conviction on a charge of involuntary manslaughter, and reversed because the definition of involuntary manslaughter under 18 U.S.C. § 1112(a) covered "commission . . . without due caution and circumspection[] of a lawful act which might produce death," whereas the defendant argued – and the district court disagreed – that the offense had an essential element of "gross negligence." *United States v. Keith*, 605 F.2d 462, 463 (9th Cir. 1979). Without that element, the defendant argued, "without due caution and circumspection" connoted "simple negligence sufficient for civil liability." *Id.* Drawing from *Pardee*, and citing *Barbeau*, the Ninth Circuit agreed with the defendant that gross negligence was one "essential" element for an involuntary manslaughter conviction under Section 1112. *See id.* at 463-64. Defendant's primary argument here is that the manner of statutory analysis employed in *Pardee*, and adopted by the Ninth Circuit in *Keith*, should apply equally to a manslaughter-by-negligence charge under Section 1115.

Over thirty years later, in 2013, the Ninth Circuit issued *United States v. Garcia*, 729 F.3d 1171 (9th Cir. 2013). Like *Keith*, it involved a conviction for involuntary manslaughter in violation of 18 U.S.C. § 1112(a). *See id.* at 1175. *Garcia* commented that "[s]ignificant case law" in the Ninth Circuit and others "provides a gloss on the statutory text," *id.*, stating that the Circuit had "consistently held that involuntary manslaughter" requires gross negligence, citing *Keith*, *United States v. Shortman*, 91 F.3d 80, 81 (9th Cir. 1996), and *United States v. Crowe*, 563 F.3d 969, 973 (9th Cir. 2009). *See also United States v. Drew*, 722 F.2d 551, 553 (9th Cir. 1983). The Ninth Circuit reversed the conviction because the district court had given an erroneous jury instruction in this regard, allowing the jury to convict without a finding of gross negligence. *See Garcia*, 729 F.3d at 1174-77, 1179.

Outside of the Fifth Circuit's assessment in *O'Keefe* (and effective repetition in *Kaluza*), there is limited case law *directly* deciding the specific question of whether Section 1115, like Section 1112, has gross negligence as a required element. Defendant has been able to locate at least one federal district court decision supporting his position – *United States v. Hilger*, No. CR 87-0803 JPV (N.D. Cal. Mar. 10, 1988), *aff'd on other grounds*, 867 F.2d 566, 566-67 (9th Cir.

6

1989) (refraining from considering arguments regarding proper interpretation of Section 1115 because chosen federal district was improper venue).[5] There, the District Court concluded – over the Government's objection that the plain language of the statute did not require gross negligence, and that Congress had written it as is "probably reasoning the great trust that is put in captains of seagoing vessels" – that Section 1115 did, in fact, require gross negligence,[6] because the predecessor statute "required manslaughter," which itself required gross negligence. Docket No. 42-2, at 3:18-8:20, 14:23-15:3. The District Court also relied upon Section 1112 case law, in part noting that statute likewise did not say anything on its face about "gross negligence. *Id.* at 5:24-6:9. With the decision being reached at oral argument, the *Hilger* District Court did not cite any specific authority (such as *Keith*) on this point.

Notwithstanding *O'Keefe* being the only published federal appellate decision directly on-point, under the Ninth Circuit's approach in *Keith* (adopting *Pardee*) and *Garcia*, it is difficult for this Court to understand why gross negligence would be required for an involuntary manslaughter conviction under Section 1112 but *not* for a conviction under Section 1115. *Neither* statute facially requires gross negligence, but common-law understandings incorporate that requirement into an involuntary manslaughter charge under Section 1112. The Government itself has described its charge against Defendant under Section 1115 as "Seaman's Manslaughter," but has been unable to convincingly explain why a similar incorporation of common-law understandings should not occur under that statute.[7]

The Government argues that the plain language of Section 1115 requires only simple negligence, and that if the plain language answers the question, you look no further. In addition,

---

[5] The transcript of the hearing before the *Hilger* district court is attached to Defendant's motion as Exhibit A. *See* Docket No. 42-2; *see also* Docket No. 42-3 (Order Dismissing Indictment in *Hilger*). Citations to the transcript will be to the docket number for that transcript and the pagination on the transcript itself, as opposed to the pagination this Court's CM/ECF system itself provides.

[6] Another district court reached a similar decision in *United States v. Thurston*. *See* 362 F.3d 1319, 1321-22 (11th Cir. 2004) (referring to district court's determination at sentencing hearing – on guilty plea for causing death of crew member through simple negligence – that Section 1115 required gross negligence, leading district court to set aside guilty plea and dismiss indictment as defective). In its later unpublished decision in *Alvarez*, *see* Footnote 1, *supra*, the Eleventh Circuit dismissed the import of its earlier decision in *Thurston*, characterizing it – properly, at least at the appellate level – as one simply presenting a double jeopardy issue. *See Alvarez*, 809 Fed. Appx. at 568 n.2.

[7] Defendant also cites the Court to Black's Law Dictionary and the Model Penal Code for support for the conclusion that criminal negligence requires proof of gross negligence. *See* Docket No. 42, at 13:17-14:4. The Government appears to have no response to this side-point (one that the Court seemingly has no cause to examine if it is to stop at the plain language as informed by common-law understandings).

7

it argues that analysis of Section 1112 goes beyond that "by an importation of federal common [law] principles applicable only" to that "admittedly-ambiguous" statute.  Docket No. 50, at 10:19-22.  But none of the analyses in *Barbeau*, *Pardee* or *Keith* were based on the statutes in question – including Section 1112 – being considered "ambiguous."  In fact, though it is not entirely clear that it was referring to the "without due caution and circumspection" language, to the extent the Fourth Circuit touched on the issue of ambiguity in the statute, it determined just the opposite: "Here Congress has proscribed [involuntary manslaughter] as a felony and fixed the punishment, all *without* ambiguity."  *Pardee*, 368 F.2d at 373 (emphasis added).  Moreover, *Barbeau*, *Pardee* and *Keith* did stop at the plain language *as informed by common law rules and principles*.  If these courts can construe Section 1112 by simply applying common-law understandings of the type of negligence required for a successful manslaughter conviction without going beyond the "plain language" of the statute, why would the same not be true with respect to Section 1115?  The Court can agree with the Government that the two statutes have "stark differences in their plain language," but under the established precedent on this point . . . so what?  "[M]isconduct, negligence, or inattention to . . . duties" is *more* ambiguous than "without due caution and circumspection"?

        Defendant has directed the Court to two Supreme Court decisions more-recent than *Morissette* that only support the type of analysis that he asserts is proper here.  In *Staples v. United States*, 511 U.S. 600 (1994), the Supreme Court examined the mental state necessary for a conviction under 26 U.S.C. § 5861(d).  While the Court announced that "[t]he language of the statute" was "the starting place in [its] inquiry," it quickly noted that the statute "provide[d] little explicit guidance" because the statute was "silent concerning the *mens rea* required for a violation."  *Id.* 605.  Still, it determined that silence "by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element."  *Id.*  Instead, the Court "must construe the statute in light of the background rules of the common law in which the requirement of some *mens rea* for a crime is firmly embedded."  *Id.* (omitting internal citation).  In addition, the Supreme Court avoided having to apply the rule of lenity – where "an ambiguous criminal statute is to be construed in favor of the accused" – in *Staples* because "the background rule of the common law favoring *mens rea* and the substantial body of precedent we have developed construing statutes that do not specify a mental element provide considerable interpretive tools from which we can 'seize aid,'" such that the Court could not reach the "ultimate

8

impression" that the statute was "'grievous[ly] ambiguous." *Staples*, 511 U.S. at 619 n.17 (quoting *Chapman v. United States*, 500 U.S. 453, 463 (1991)). In other words, these "background" common-law understandings are applied to statutory terms – at least in criminal statutes – *before* determining whether a statute is ambiguous. That is all Defendant asks for here.

Then, in 2015 (10 years after *O'Keefe* and less than three months after *Kaluza*), came a case that made two points that tie together Defendant's arguments here. *Elonis v. United States*, 575 U.S. 723 (2015), involved a conviction for violation of 18 U.S.C. § 875(c), for "transmit[ting] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another," and the question of whether the defendant needed to have the intention to threaten anyone, as opposed to just the intention to make the communication in question. *Id.* at 726, 731-32. The Court reversed the conviction. *See id.* at 742.

The Supreme Court first observed that neither side had identified any indication of a particular mental state requirement in the statute's text. *See id.* at 734. However, "[t]he fact that the statute does not specify any required mental state . . . does not mean that none exists," it reasoned, citing *Morissette*, among other cases. *Id.*[8] Then, in discussing whether liability under the statute should simply turn on whether a "reasonable person" would regard the communication as a threat, "regardless of what the defendant thinks," the Court concluded that this would "'reduce[] culpability on the all-important element of the crime to negligence,' and we 'have long been reluctant to infer that a negligence standard was intended in criminal statutes.'" *Id.* at 738 (quoting *United States v. Jeffries*, 692 F.3d 473, 484 (6th Cir. 2012) (Sutton, J., *dubitante*) and *Rogers v. United States*, 422 U.S. 35, 47 (1975) (Marshall, J., concurring)); *see also Ruan v. United States*, 142 S.Ct. 2370, 2381 (2022). Both of these principles would appear to aid Defendant's argument here.[9]

---

[8] The Eleventh Circuit's unpublished decision in *Alvarez* rejected the defendant's reliance in that case on *Elonis*, which it distinguished as a case involving Congressional silence, in contrast with Section 1115's on-its-face reference to "negligence." *See* 809 Fed. Appx. at 569 n.3. However, this reasoning does not appear to properly account for case law interpreting *Section 1112*. Though that statute does not use the precise term "negligence," one could conclude that it might as well have when it used the phrase "without due caution and circumspection."

[9] The Government dismisses Defendant's reliance on *Morissette*, *Staples*, *Elonis* and *Ruan* as amounting to nothing more than him isolating "snippets of language," with "misleading and incomplete" citations to *Morissette*, and the remainder of those three cases being "inapposite because they deal with the Supreme Court's efforts to determine what scienter should be implied in particular criminal statutes where Congress did not explicitly make its intent clear in the text of the statutes themselves." Docket No. 50, at 23:11-19. No doubt the Government is correct, so far as it goes. But to say those decisions are about something different, *in general*, does not mean that they do not also reflect methods and rules of interpreting criminal statutes that can be useful in the present context. The criticism

Of course, the Government would respond that there is no need to "infer" that negligence was intended to be covered by Section 1115, because that very term is included in the statute's language. But, under the reasoning of *Keith* (adopting *Pardee*), when common-law understandings are applied to construe that negligence term such that a standard of *gross* negligence is actually required, it would in fact be necessary to "infer" that, no, simple negligence actually *is* all that is necessary to potentially send someone to prison for up to ten years. The Supreme Court's "reluctan[ce]" is understandable.

The Government also argues that the Court should interpret "negligence" to be given a "similar meaning" as the "bookend" terms "misconduct" and "inattention to duties," before asserting that Defendant's contention that "negligence" actually means "gross negligence" would render "misconduct" and "inattention to duties" as mere surplusage or a nullity. But, as Defendant points out, if the concepts already cover the same ground, aren't those terms *already* mere surplusage or nullities? In any event, the Government's criticisms about application of interpretive rules still does not account for the Ninth Circuit's apparent preference for importation of common-law understandings in the area of negligence-based manslaughter charges.

Finally, in making the argument that Section 1115 does not draw from the common law, the Government asserts that the statute is an early example of a "public welfare statute." But Section 1115 does not fit within that category no matter the reason for its genesis. For those types of crimes, "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." *Morissette*, 342 U.S. at 256. Indeed, *Staples* observed that such offenses have been created and recognized in "limited circumstances, and typically involve statutes that regulate "potentially harmful or injurious items." 511 U.S. at 607. It did not apply in that case (which involved an AR-15), because "[g]uns in general are not 'deleterious devices or products or obnoxious waste materials,' that put their owners on notice that they stand 'in responsible relation to a public danger.'" *Id.* at 610-11 (quoting *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 565 (1971), and *United States v. Dotterweich*, 320 U.S. 277, 281 (1943)). The fact that a violation of Section 5861(d) could mean up to 10 years in prison "confirm[ed]" the Supreme Court's reading of the statute in *Staples*, with the Court noting that "the cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only

---

also implies that Section 1115 is a statute where Congress did make its intent clear (without aid of common-law understandings). As expressed herein, there is good reason to question that supposition.

light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary." *Id.* at 616; *see also id.* at 618; *Ruan v. United States*, 142 S.Ct. 2370, 2378 (2022) (concluding that 18 U.S.C. § 841 "does not define a regulatory or public welfare offense that carries only minor penalties," but instead "imposes severe penalties upon those who violate it, including life imprisonment and fines up to $1 million").

As Defendant points out, the statute he is charged with violating establishes a *homicide* crime under Chapter 51 (titled "Homicide") of Part I of Title 18. The charge carries with it the possibility of imprisonment for up to ten years (and/or fines). The Court consequently rejects the argument that it is a "public welfare" offense.

Reading Section 1115 with no context, and particularly without paying attention to the analyses present in *Barbeau*, *Pardee*, and *Keith*, might lead one to reasonably conclude that nothing more than basic, simple, traditional negligence, as understood in civil tort law, might be all that is necessary to convict an individual falling within the scope of that statute for up to ten years. But available Ninth Circuit and Supreme Court case law suggests that the question is more complicated than that. Defendant has presented persuasive reasons for why the statute should be read to require gross negligence as an element necessary for conviction (and indictment), and the Government's reasons to the contrary do not convince the Court otherwise. The Fifth Circuit, unburdened by the path the Ninth Circuit has taken on relevant issues, may have understandably decided differently (although, even so, this Court does not find its reasoning convincing).

For the foregoing reasons, the Court will grant Defendant's motion, dismissing the FSI without prejudice.[10]

---

[10] The Court will discuss with the Government whether it intends to refile the action incorporating the gross negligence element or whether it intends to immediately appeal the ruling. *See generally United States v. Lester*, 992 F.2d 174, 176 (8th Cir. 1993) ("The plain language of the statute [18 U.S.C. § 3731] gives the government the right to appeal the district court's dismissal of an indictment and does not distinguish between dismissal with prejudice or without prejudice.").